# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

ORA MAE MOORE                                                                                          PLAINTIFF

vs.                                                                        CIVIL ACTION NO. 1:11-cv-00135-SAA

THE SOCIAL SECURITY ADMINISTRATION                                                 DEFENDANT

## MEMORANDUM OPINION

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Ora Mae Moore for period of disability (POD) and disability insurance benefits (DIB) under Sections 216(I) and 223 of the Social Security Act. Plaintiff protectively filed an application for POD and DIB on June 21, 2007, alleging disability beginning on April 6, 2006. Docket 10, p. 173, 239-243. Plaintiff's claim was denied initially (Docket 10, p. 173-174) and on reconsideration. Docket 10, p. 206-208. She filed a request for hearing[1] (Docket 10, p. 209-210) and was assisted by a non-attorney representative at the administrative hearing on August 31, 2009. Docket 10, p. 81-127. The Administrative Law Judge (ALJ) issued an unfavorable decision on October 30, 2009. Docket 10, p. 178-187. The Appeals Council granted the plaintiff's request for review under the substantial evidence provision of 20 CFR 404.970 and remanded the case for further consideration. Docket 10, p. 190-192. The ALJ held a second administrative hearing on July 1, 2010 (Docket 10, p. 12-52) and issued a second unfavorable decision on August 18, 2010. Docket 10, p. 131-140. The Appeals Council denied plaintiff's request for a review of the

---

[1]The plaintiff requested a hearing on November 27, 2007 (Docket 10, p. 209-210) but a hearing was not held until almost 2 years later, on August 31, 2009. Docket 10, p. 81-127.

second unfavorable decision (Docket 10, p. 8-10), and the plaintiff timely appealed to this court. Because both parties have consented to have a magistrate judge conduct all the proceedings in this case under 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

I. FACTS

Plaintiff was born on October 10, 1961 and was 45 years old on November 1, 2006, the alleged onset date of her disability.[2] She completed the twelfth grade and two years of college (Docket 10, p. 21) and previously worked as a baker, cashier, hand packager, child care attendant, certified nursing assistant, stock clerk, salad counter attendant, hand tacker and housekeeper/cleaner.[3] Docket 10, p. 44-45. Plaintiff initially claimed disability due to a brain tumor, vision loss, migraines, seizures, back problems and memory loss (Docket 10, p. 267), and the record contains evidence of obesity.

The ALJ determined that plaintiff suffered from "severe" impairments, including

---

[2]The plaintiff's applications for disability allege an onset date of April 6, 2006. Docket 10, p. 239-243. At the hearing on July 1, 2010, she reaffirmed the amendment of her onset date to November 1, 2006, which was initially amended at the previous hearing. Docket 10, p. 18. However, the ALJ's decision finds that the plaintiff was not disabled as of April 6, 2006. Docket 10, p. 131-132.

[3]The plaintiff's past relevant work is reflected inconsistently throughout the record. The plaintiff reported the following job titles: assembly line, bakery associate, cafeteria worker, cashier, cd packer, child care, clothing store attendant, CNA, custodial/ janitor, inspector, picker/ packer, retail assistant, runner, salad bar attendant, seamstress. Docket 10, p. 268, 294, 305-306, 315-316, 348. The VE from the second hearing on July 1, 2010 categorized the plaintiff's past relevant work as baker, cashier, hand packager, child care attendant, certified nurses assistant, stock clerk, salad counter attendant, hand tacker, housekeeper/cleaner. Docket 10, p. 44-45. The VE from the first administrative hearing on August 31, 2009 categorized the plaintiff's past relevant work as cashier, certified nurses assistant, sewing machine operator, commercial cleaner, child care provider, assembly line worker and hand packager. Docket 10, p. 113-117.

blind[ness] in right eye, left knee pain, arthritis, and morbid obesity (Docket 10, p. 134) but that these impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). The ALJ noted his consideration of Listing 1.02 for her musculoskeletal impairment and found that the required severity was not met.[4] Docket 10, p. 134.

Considering the entire record, the ALJ concluded that the plaintiff retained the Residual Functional Capacity (RFC) to perform

> "light work as defined in 20 CFR 404.1567(b) except she would be limited to walking a maximum of 100 feet at a time; she should have a sit stand option; she could sit for up to 30 minutes; she could stand 15 to 20 minutes at a time; she could sit and stand a total of eight hours per day; she could occasionally bend and stoop with no kneeling; and she could do no climbing of ladders, ropes, ramps, stairs, or scaffolds. As a result of monocular vision, she should not work around hazardous equipment or machinery; she should not work around heights; she should do no commercial driving; and she should not have a job requiring good depth perception or side vision to right side. Docket 10, p. 134.

The ALJ found that the plaintiff's impairments "could reasonably be expected to cause the alleged symptoms" but that her statements of the "intensity, persistence, and limiting effects" were not fully credible. Docket 10, p. 135. The ALJ discounted the plaintiff's testimony describing her "fairly limited" daily activities because "allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty" and because "the relatively weak medical evidence" did not support the alleged degree of limitation. Docket 10, p. 137-138.

Based on testimony of a vocational expert [VE], the ALJ held that plaintiff's "severe" impairments prevent her from performing her past relevant work. Docket 10, p. 138. The VE testified that with the limitations set out by the ALJ in his hypothetical, the plaintiff could

---

[4]The ALJ did not specifically address any other Listing in his decision.

perform jobs such as storage rental clerk, fabric inspector, front desk clerk (day or night shift), fabric inspector and information clerk, which represent unskilled and semiskilled work performed at the light and sedentary levels of exertion.[5]  Docket 10, p. 47-50, 138-139. Considering plaintiff's age, education, work experience and RFC, the ALJ concluded that the plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and she therefore was "not disabled" under the Act.  Docket 10, p. 138-139.

  The plaintiff claims that the ALJ improperly expanded the scope of the Appeals Council remand order by redetermining her severe impairments when he omitted the previously determined severe impairments of pseudotumor cerebri, migraine headaches, and left hip osteoarthritis, and that he failed to consider the plaintiff's visual impairments in her left eye. Docket 15, p. 5-8.  The plaintiff further argues that, despite specific directives from the Appeals Council, the ALJ failed to properly consider her obesity in combination with her other severe impairments.  Docket 15, p. 8-10.  Additionally, the plaintiff contends that the ALJ's RFC was not supported by any treating or examining physician and that the ALJ failed to develop the record.  Docket 15, p. 10-15.  The plaintiff submitted a Medical Source Statement from one of her treating physicians, Dr. Soriano, dated six days before she filed the Complaint in this matter, for consideration as "new and material evidence" because it is the only MSS from a treating or examining physician that establishes functional limitations.  Docket 15, p. 15-18.

---

[5]Storage rental clerk (DOT 295.367-026) is unskilled work performed at the light level of exertion; front desk clerk (DOT238.367-038) is light and unskilled and front desk clerk night shift is sedentary and unskilled; fabric inspector (DOT 781.687-014) is light and semiskilled; and information clerk (DOT 237.367-022) is sedentary and unskilled.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[6] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[7] First, plaintiff must prove she is not currently engaged in substantial gainful activity.[8] Second, plaintiff must prove her impairment is "severe" in that it "significantly limits her physical or mental ability to do basic work activities . . . ."[9] At step three, the ALJ must conclude plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[10] If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the physical and mental demands of her past relevant work.[11] At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[12] If the Commissioner

---

[6]*See* 20 C.F.R. § 404.1520 (2010).

[7]*Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

[8]20 C.F.R. § 404.1520(b) (2010).

[9]20 C.F.R. § 404.1520(c) (2010).

[10]20 C.F.R. § 404.1520(d) (2010). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2003).

[11]20 C.F.R. § 404.1520(e) (2010).

[12]20 C.F.R § 404.1520(g) (2010).

proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that she cannot, in fact, perform that work.[13]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999); citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). It is the court's responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the Commissioner applied the proper legal standards in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[14] even if it finds that the evidence leans against the Commissioner's decision.[15] In the Fifth Circuit substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The proper inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by

---

[13]*Muse*, 925 F.2d at 789.

[14]*Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[15]*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### III. DISCUSSION

The plaintiff has not engaged in substantial gainful activity since April 6, 2006, satisfying step one. Docket 10, p. 24, 133, 267. The ALJ found at step two that the plaintiff's right eye blindness, left knee pain, arthritis, and morbid obesity were severe but determined at step three that the impairments did not meet the stringent requirements set out in the listings.[16]

The plaintiff argues that the ALJ failed to consider all of the plaintiff's impairments at step two, including visual impairments in her left eye and physical impairments that the ALJ previously had determined were severe, including pseudotumor cerebri, migraine headaches, and left hip osteoarthritis.[17] Docket 15, p. 5-8. She argues that the ALJ improperly expanded the scope of the Appeals Council remand order by redetermining her severe impairments at step two, resulting in a step-three determination that was erroneous and unsupported by the evidence. *Id.*

The plaintiff further contends that, despite the Appeals Council's specific directives, the

---

[16] At step three of the sequential evaluation process, plaintiff must prove by objective medical evidence that his impairment, either singly or in combination with other impairments, meets the stringent requirements set out in the listings. *Selders v. Sullivan*, 914 F.2d 614, 617, 619 (5th Cir. 1990), citing *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 891-92 (1990) (claimant bears the burden of proof to show medical findings that he meets each element of the listing).

[17] In his October 30, 2009 decision, the ALJ determined that the plaintiff suffered from the severe impairments of pseudotumor cerebri; vision problems - no vision in right eye; status post bilateral eye surgery; migraine headaches; and left hip pain - osteoarthritis (20 CFR 404.1520(c)). Docket 10, p. 180. The ALJ's second decision, on August 18, 2010 found severe impairments of blind[ness] in right eye, left knee pain, arthritis, and morbid obesity. Docket 10, p. 134.

7

ALJ failed to properly consider her obesity in combination with her other severe impairments. Docket 15, p. 8-10. In his first decision, the ALJ did not find that the plaintiff's obesity was a severe impairment. Docket 10, p. 178-187. The Appeals Council noted that, at 65 inches tall and 235 pounds, the plaintiff is obese and instructed the ALJ to "[f]urther evaluate the claimant's obesity as required under Social Security Ruling 02-01p, and explain how the obesity impacts her ability to function." Docket 10, p. 191.

In his second decision, the ALJ found that the plaintiff's obesity was a severe impairment and noted her height and weight – 5' 5" and 235 pounds. The ALJ stated that he considered Listing 1.02,[18] and his RFC quantified the amount of walking she could perform – a maximum of 100 feet at a time. Docket 10, p. 134. However, the ALJ did not offer any further examination of the impact of obesity on her ability to function as required by social security regulations and as directed by the Appeals Council. In a side-by-side comparison of the two decisions, it appears that the ALJ merely restated many of his previous findings.

Listing 1.02 requires "major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity . . . resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.02. Listing 1.00B2b defines "inability to ambulate effectively" as:

> (1) ... an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities...
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school...

---

[18]"Listing 1.02 has been considered; however, the claimant's impairment while severe does not reach the level of severity required to meet or equal this listing." Docket 10, p. 134.

20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.00.

In evaluating the effects of obesity, the regulations specifically acknowledge that a disturbance of the muscoloskeletal system

> can be a major cause of disability in individuals with obesity [and] the combined effects of obesity with muscoloskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.00Q.

Arguing that the ALJ sufficiently considered the cumulative effects of obesity in his analysis, the Commissioner states that the ALJ acknowledged the plaintiff's testimony that her weight affects her ability to function and that the RFC finding "displayed consideration of the exertional limitations resulting from Plaintiff's weight combined with her other impairments." Docket 18, p. 13. These arguments are particularly weak given that the ALJ's only acknowledgment of the plaintiff's testimony of functional ability states "[s]he is affected by her weight." Docket 10, p. 135. Further, the only exertional limitation in the RFC that could possibly be construed to demonstrate his consideration of the combined effects of obesity is the walking limitation of "a maximum of 100 feet at a time," and it is not accompanied by medical evidence to support the limitation Docket 10, p. 134.

The Commissioner further argues that the ALJ's language of "impairment or *combination of* impairments"[19] demonstrates that he properly considered the cumulative effects of obesity.

---

[19]Paragraph 4 of the ALJ's decision states: "The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)."

Docket 10, p. 12-13. This argument is without merit: paragraph number 4 is a commonly used generic heading, and the explanation that follows does not address any combination of impairments. The entirety of paragraph 4 states "Listing 1.02 has been considered; however, the claimant's impairment while severe does not reach the level of severity required to meet or equal this listing." Docket 10, p. 134.

Clearly, the ALJ's decision does not contain the type of detailed analysis that is required by Social Security Ruling 02-1p. "Obesity can cause limitation of function." SSR-02-1p, p. 6. Such limitations may include deterioration or impairment "in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling ...," as well as an individual's "ability to do postural function, such as climbing, balance, stooping, and crouching." *Id.* SSR 02-1p acknowledges that often obesity may affect an individual in a less than obvious manner – "[f]or example, some people with obesity also may have sleep apnea." *Id.* Consequently, the ruling requires an ALJ to assess the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment, taking into account fatigue or other combined effects of obesity which, with other impairments, may be greater than might be expected without obesity. SR - 02-1p, p. 6.

Although the ALJ may have considered the impact of obesity in his RFC restrictions, as the Commissioner argues, he certainly did not adequately state or explain his findings; as a consequence, his decision is not supported by substantial evidence. The undersigned finds that the ALJ's decision should be remanded to a new ALJ for further development of the record., including a proper evaluation of the effects of obesity on her functioning.

---

Docket 10, p. 134.

Because this case will be remanded for further proceedings consistent with this opinion, the court need not fully address the merits of the plaintiff's remaining arguments at this time. However, the undersigned notes that several of the remaining arguments appear to have merit, including plaintiff's argument that the ALJ's RFC was not supported by any treating or examining physician.[20] Docket 15, p. 10-15. Further, the ALJ did not explain why the plaintiff's impairments of pseudotumor cerebri, migraine headaches, and left hip osteoarthritis were not found to be "severe" impairments in the second decision. On remand, the ALJ should closely consider all of the plaintiff's alleged impairments and obtain the necessary medical evidence to allow him or her to accurately assess the plaintiff's functional abilities.

A separate judgment in accordance with this Memorandum Opinion will issue this date.

**SO ORDERED**, this, the 30th day of March, 2012.

                                                        /s/ S. Allan Alexander
                                                    UNITED STATES MAGISTRATE JUDGE

---

[20] The medical evaluations contained in the record do not address the effects of obesity on her functioning (Docket 10, p. 545-560) and, although the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render a decision, *Turner v. Califano*, 563 F.2d 669 (5th Cir. 1977), it appears that additional evidence may be required for a proper analysis.

    Further, the ALJ found that "a review of the record in this case reveals no restrictions recommended by the treating doctor." Docket 10, p. 137. However, he did not seek additional information from treating physicians, even in light of the lack of evidence of the effects of obesity contained in the record: he may not have satisfied his affirmative duty to develop the record and to "ensure that his decision is an informed decision based upon sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996).